THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
————————————————————————
                           :
HOWARD HURT,               :   HONORABLE JEROME B. SIMANDLE
                           :
           Plaintiff,      :
                           :   Civil No. 08-3053 (JBS/JS)
      v.                   :
                           :
CITY OF ATLANTIC CITY, et al., :
                           :   OPINION
           Defendants.     :
                           :
————————————————————————
```

APPEARANCES:

Jeffrey M. Sheppard, Esq.
MUTCHKO & SHEPPARD, ESQS.
22 North Shore Road
Absecon, NJ 08201
      Counsel for Plaintiff Howard Hurt

Anthony A. Swan, Esq.
CITY OF ATLANTIC CITY
1301 Bacharach Boulevard
City Hall, Suite 406
Atlantic City, NJ 08401-4891
      Counsel for Defendant the City of Atlantic City

A. Michael Barker
BARKER, SCOTT & GELFAND
Linwood Green
210 New Road, Suite 12
Linwood, NJ 08211
      Counsel for Defendants Frank Timek, Heidi Clayton, and
      William Warner

**SIMANDLE**, District Judge:

      This matter is before the Court on the motion for summary

judgment of Defendants Frank Timek,[1] Heidi Clayton, and William

---

      [1] Officer Timek is incorrectly identified as Frank "Timik"
on the docket.  The Court will order the Clerk of Court to
correct the spelling.

Warner, all officers with the Atlantic City Police Department (collectively, "the police officer defendants") [Docket Item 14].[2]  The police officer defendants ask this Court to dismiss all claims of Plaintiff Howard Hurt, which arise out of Plaintiff's arrest on July 11, 2006 in Atlantic City, New Jersey. Plaintiff asserts that the police officer defendants used excessive force, thereby violating the Fourth Amendment[3] and as well as Plaintiff's substantive and procedural due process rights and his right to equal protection under the Fourteenth Amendment.[4]  Plaintiff seeks relief pursuant to 42 U.S.C. § 1983. Plaintiff also asserts, and seeks relief for, violations of

---

[2] Neither the City of Atlantic City nor the Atlantic City Police Department, both also defendants in this action, have moved for summary judgment or otherwise submitted dispositive motions.  In fact, it appears that the Atlantic City Police Department is in default.

[3] The police officer defendants, in their motion for summary judgment, have construed Plaintiff's complaint so broadly as to include a claim for false arrest.  The Court can find no such allegations in Plaintiff's complaint, which alleges simply that "As a result of the concerted unlawful and malicious physical abuse of the plaintiff . . ." the defendants deprived Plaintiff of multiple constitutional rights.  (Compl. ¶ 13.)  There is no mention of Plaintiff's arrest.  Moreover, Plaintiff does not offer any argument or evidence in support of a claim for false arrest.  Consequently, to the extent that Plaintiff's complaint can be construed to raise a claim for false arrest, the defendant police officers are entitled to summary judgment on that claim.

[4] Plaintiff's complaint also includes claims under the Fifth Amendment, but Plaintiff has abandoned those claims, conceding that they are inapplicable to these state defendants.  (Pl. Opp'n Br. at 3.)

2

Article I of the New Jersey Constitution[5] and New Jersey tort law.  For the reasons set forth below, the Court will grant summary judgment in favor of all the police officer defendants on Plaintiff's claims pursuant to the Fifth (which he has abandoned) and Fourteenth Amendments, as well as any claim for false arrest, but deny summary judgment to Defendants Timek and Warner on Plaintiff's claims arising out of the Fourth Amendment, Article I of the New Jersey Constitution, and tort.  The Court will grant summary judgment to Defendant Clayton as to all of Plaintiff's claims.

I.    **BACKGROUND**

   **A.   Facts**

   On this motion for summary judgment, the Court will construe all facts in favor of Plaintiff and assume those facts submitted by Plaintiff to be true.  Where Plaintiff has failed to submit any contrary facts, the Court must accepted the uncontroverted facts as presented by the police officer defendants.[6]

_____

   [5] Plaintiff does not identify what provision of the New Jersey Constitution he is seeking to enforce, asserting only that the defendants violated his "civil rights" under state law. (Compl. ¶ 9.)  The police officer defendants have assumed, and the Court agrees, that Plaintiff is alleging violation of the search and seizure provisions of paragraph seven of Article I of the New Jersey Constitution.  Plaintiff, in his opposition, does not challenge this interpretation of his complaint.

   [6] Plaintiff cannot "withstand summary judgment by resting on mere allegations or denials in the pleadings; rather, that party must set forth 'specific facts showing that there is a genuine issue for trial,' else summary judgment, 'if appropriate,' will

On July 11, 2006, at approximately 4:30 in the afternoon, Defendant Timek pulled his patrol vehicle into the intersection of North Carolina and Adriatic Avenues in Atlantic City. (Initial Police Report, Defs. Exh. 1 at 7.)  Plaintiff road his bike into the back of the police car.  (Id.)  Plaintiff then moved his bike out of the street, because there was on-coming traffic.  (Pl. Dep. at 54.)  As Timek got out of his police car, Timek claims that Plaintiff began shouting threats and profanities at Timek, (Initial Police Report, Defs. Exh. 1 at 7), but Plaintiff denies yelling profanities, (Pl. Dep. at 56). Timek recognized Plaintiff, who smelled of alcohol and was slurring his speech, as a former boxer with a history of fighting with police officers and resisting arrest.  (Initial Police Report, Defs. Exh. 1 at 7.)  Plaintiff did not recognized Timek. (Pl. Dep. at 54-55.)  One of Plaintiff's hands was bleeding and

---

be entered." U.S. v. Premises Known as 717 S. Woodward Street, Allentown, Pa., 2 F.3d 529, 533 (3d Cir. 1993) (quoting Fed. R. Civ. P. 56(e))(citations omitted).  It is for this reason that Local Civil Rule 56.1(a) requires the opponent of summery judgment, when responding to the moving party's statement of undisputed facts, to identify "each material fact in dispute and cit[e] to the affidavits and other documents submitted in connection with the motion."  Facts are required.  Mere denials are not sufficient to put the defendants' facts into dispute. Therefore, to the extent Plaintiff has offered his own facts, in the form of the Plaintiff's deposition testimony, the Court will take that evidence to be true.  However, where Plaintiff has offered no contrary evidence and has merely denied the defendant officers' facts (or left the defendants to "their proofs"), the Court finds that these facts are not genuinely in dispute.  See Premises Known as 717, 2 F.3d at 533; Local Civ. R. 56.1(a).

his elbow appeared to be injured.  (Initial Police Report, Defs. Exh. 1 at 7.)  Timek called for emergency medical services ("EMS") and for back up.  (Id.)

Timek ordered Plaintiff not to touch his bicycle and two bottles of alcohol lying on the ground, and ordered him to sit down.  (Id.)  Despite Timek's "numerous" orders, Plaintiff refused to comply[7] and instead got into a "combative stance," said "You watch now, I'm going to fuck you up," and approached Timek "aggressively raising his fists."  (Id.)  Timek, fearing for his safety, gave Plaintiff several orders to calm down and back up, but Plaintiff did not comply.  (Id.)  Timek then told Plaintiff that Plaintiff was under arrest and then Timek used his impact weapon to hit Plaintiff approximately two times on his legs.  (Id.)  Plaintiff continued to move towards Timek and Timek struck Plaintiff twice on his hands, which allowed Timek to bring Plaintiff to the ground.  (Id.)  Once on the ground, Timek continued to order Plaintiff to stop resisting and to put up his hands, but Plaintiff did not comply.  (Id.)  Plaintiff attempted to spit at Timek.  (Id.) At some point, Defendant Warner arrived at the scene and helped Timek to put handcuffs on Plaintiff. (Id.)

---

[7] Plaintiff testifies that he refused to comply because he was afraid of on-coming traffic.  (Pl. Dep. at 54-57.)

After the police officers handcuffed Plaintiff, they allegedly began to beat him.  (Pl. Dep. at 134-37.)  Several other officers arrived and surrounded Plaintiff on the ground, so that passerby could not see him.  (Id. at 137.)  Both Timek and Warner punched Plaintiff and an officer kicked him in the jaw.  (Id. at 135, 137.)  The beating lasted at least six or seven minutes.  (Id. at 135.)

Eventually, EMS arrived and Defendant Clayton brought Plaintiff to the hospital for treatment.  (Initial Police Report, Defs. Exh. 1 at 8.)  Defendant Clayton's only interaction with Plaintiff was to bring him to the hospital and she did not use any force while transporting him.[8]  (Clayton Affidavit, Defs. Exh. 9 ¶¶ 7, 8, 11.)  The police charged Plaintiff with obstruction, aggravated assault on police, and resisting arrest, and issued a summons for failure to observe a traffic signal.  (Initial Police Report, Defs. Exh. 1 at 8; Criminal Complaint, Defs. Exh. 2.)

On April 11, 2007, Plaintiff appeared before the Honorable Matthew H. Powals in Atlantic City Municipal Court on the charges arising out of the July 11, 2006 incident.  (Court Transcript, Defs. Exh. 4.)  At that hearing he was represented by present plaintiff's counsel.  (Id.)  Plaintiff pled guilty to simple

---

[8] Plaintiff testified that he did not recall whether Clayton used any force against him.  (Pl. Dep. at 135-36.)

6

assault, N.J. Stat. Ann. § 2C:12-1(a)(1),[9] resisting arrest, N.J. Stat. Ann. § 2C:29-2(a)(1),[10] and failure to observe a traffic signal, N.J. Stat. Ann. § 39:4-81.[11]  (Id. at 2-6.)  Plaintiff admitted that he "prevented the officer from effecting a lawful arrest by refusing to surrender his hands to be handcuffed." (Id. at 4.)  Plaintiff also admitted that he took "a fighting stance with both fists raised, advancing towards Officer Timek." (Id.)  It is undisputed that Plaintiff has not challenged those convictions.

## B.   Procedural History

On June 18, 2008, Plaintiff brought suit against the City of Atlantic City, the Atlantic City Police Department, and Officers Timek, Warner, and Clayton.  On July 31, 2009, the defendant police officers submitted this motion for summary judgment, to which they have attached multiple police reports, the transcript of Plaintiff's guilty pleas, and an affidavit from Officer

---

[9] "A person is guilty of assault if he . . . Attempts to cause or purposely, knowingly or recklessly causes bodily injury to another."  N.J. Stat. Ann. § 2C:12-1(a)(1).

[10] "[A] person is guilty of a disorderly persons offense if he purposely prevents or attempts to prevent a law enforcement officer from effecting an arrest."  N.J. Stat. Ann. § 2C:29-2(a)(1).

[11] "The driver of every vehicle, the motorman of every street car and every pedestrian shall obey the instructions of any official traffic control device applicable thereto, placed in accordance with the provisions of this chapter, unless otherwise directed by a traffic or police officer."  N.J. Stat. Ann. § 39:4-81.

Clayton.  Plaintiff opposes and has provided sixteen pages of his deposition in support of his opposition for summary judgment.

## II.  DISCUSSION

### A.  Standard of Review

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  Id.

"[T]he nonmoving party may not, in the face of a showing of a lack of a genuine issue, withstand summary judgment by resting on mere allegations or denials in the pleadings; rather, that party must set forth 'specific facts showing that there is a genuine issue for trial,' else summary judgment, 'if appropriate,' will be entered." U.S. v. Premises Known as 717 S. Woodward Street, Allentown, Pa., 2 F.3d 529, 533 (3d Cir. 1993) (quoting Fed. R. Civ. P. 56(e))(citations omitted).

> Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element

8

> essential to that party's case, and on which that
> party will bear the burden of proof at trial.   In
> such a situation, there can be "no genuine issue as
> to any material fact," since a complete failure of
> proof concerning an essential element of the
> nonmoving party's case necessarily renders all
> other facts immaterial.

Celotex, 477 U.S. at 323.  Additionally, pursuant to Local Civil
Rule 56.1(a), any facts set forth in Defendants' statement of
material facts that are not disputed are deemed undisputed for
the purposes of this summary judgment motion.

     **B.   Fourteenth Amendment Claims**

    Plaintiff alleges generally that the police officer
defendants violated his rights under the Fourteenth Amendment.
The defendant officers respond that Plaintiff's excessive force
claims cannot be raised as a violation of substantive due
process, and that Plaintiff has failed to provide facts in
support of a procedural due process or equal protection
violation.  The Court agrees with the defendant officers and will
grant summary judgment on all of Plaintiff's Fourteenth Amendment
claims, as now discussed.

    Plaintiff cannot state a claim for deprivation of his
substantive due process rights.  "[A] free citizen's claim that
law enforcement officials used excessive force in the course of
making an arrest, investigatory stop, or other 'seizure' of his
person . . . is properly analyzed under the Fourth Amendment's
'objective reasonableness' standard, rather than under a

substantive due process standard." Graham v. Connor, 490 U.S. 386, 388 (1989).[12]  Consequently, the Court will dismiss Plaintiff's claims pursuant to the substantive due process protections of the Fourteenth Amendment.

Plaintiff has not stated a claim for deprivation of procedural due process, nor has he provided any evidence to support such a claim.  Plaintiff has not alleged or identified any interest of which he was deprived without sufficient process nor has he outlined how that process was deficient.  He has not opposed the defendant police officer's motion to dismiss those claims.  In the absence of any allegations, facts, or argument in support of any procedural due process claims, the Court will

---

[12] The Supreme Court further explained:

> In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force. See [Baker v. McCollan, 443 U.S. 137, 140 (1979)] ("The first inquiry in any § 1983 suit" is "to isolate the precise constitutional violation with which [the defendant] is charged").  In most instances, that will be either the Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and unusual punishments, which are the two primary sources of constitutional protection against physically abusive governmental conduct. The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized "excessive force" standard.

Graham, 490 U.S. at 393-43.

grant the defendant police officers summary judgment on such
claims.

Plaintiff has similarly failed to state or support a claim
for deprivation of his right to equal protection of the laws.
The Equal Protection Clause does not require all persons to be
treated alike, but rather that "all persons similarly situated
should be treated alike." City of Cleburne v. Cleburne Living
Ctr., 473 U.S. 432, 439 (1985).  Plaintiff has not provided any
evidence suggesting that he was treated differently than a
similarly situated class.  In fact, during his deposition,
Plaintiff testified that Officer Timek has a reputation in
Atlantic City for assaulting people, and Plaintiff explained: "I
mean, I've heard his name all over the city.  It's not only me
that he assaulted."  (Pl. Dep. at 55.)  Nor has he offered
evidence of a discriminatory intent on the part of any of the
allegedly assaulting officers.  See Washington v. Davis, 426 U.S.
229, 239-40 (1976). Therefore, the Court will grant the defendant
police officers on this claim.

     **C.   Fourth Amendment Claims**

The police officer defendants raise two challenges to
Plaintiff's Fourth Amendment excessive force claims.  First, the
police officer defendants argue that favorable judgment on
Plaintiff's claims would invalidate his criminal convictions and
so are barred under Heck v. Humphrey, 512 U.S. 477 (1994).

11

Second, the defendants argue that they are entitled to qualified immunity on those claims, should they survive Heck analysis. Plaintiff responds that his allegations do not invalidate his criminal convictions, because the excessive force that he challenges occurred after the police officers had arrested and subdued him, and that qualified immunity is not appropriate under the facts asserted in this case.  The Court finds, for the reasons explained below, that Plaintiff's excessive force claims do not necessarily invalidate his criminal convictions and that there is a genuine dispute of material facts that precludes awarding qualified immunity.

1.   *Heck* Analysis

"The Supreme Court has held that, if judgment in favor of a plaintiff in a civil suit under 42 U.S.C. § 1983 would necessarily imply the invalidity of a prior criminal conviction, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."  Lora-Pena v. FBI, 529 F.3d 503, 505 (3d Cir. 2008) (citing Heck v. Humphrey, 512 U.S. 477, 484-87 (1994)).  To determine whether a conviction[13] and a § 1983 action are

---

[13] In accepting Plaintiff's guilty pleas, the Municipal Court adopted Plaintiff's civil reservations pursuant to N.J. Ct. R. 3:9-2.  (Court Transcript, Defs. Exh. 4. at 5-6.)  Rule 3:9-2 provides that "[f]or good cause shown the court may, in accepting a plea of guilty, order that such plea not be evidential in any civil proceedings."  Plaintiff argues that the application of civil reservations makes Heck inapplicable.  Heck, however, is

incompatible under <u>Heck</u>, the Court must look to the elements of the crime and the facts asserted in the action.   <u>Nelson v. Jashurek</u>, 109 F.3d 142, 145 (3d Cir. 1997).

The police officer defendants maintain that Plaintiff's convictions for assault would necessarily be invalidated, should Plaintiff succeed on his excessive force claims, because in accepting Plaintiff's guilty plea, the Municipal Court necessarily found that the defendant officers used less force than Plaintiff.  Had the court found otherwise, Plaintiff would have been entitled to assert self-defense and Plaintiff could not have been convicted of assault.  <u>See</u> <u>State v. Mulvihill</u>, 270 A.2d 277, 279-80 (N.J. 1970) ("If, in effectuating the arrest or the temporary detention, the officer employs excessive and unnecessary force, the citizen may respond or counter with the use of reasonable force to protect himself, and if in so doing the officer is injured no criminal offense has been committed."). To support this proposition, the officer defendants cite <u>Smith v. Mitchell</u>, No. 97-6115, 2000 WL 33256676 (D.N.J. Nov. 21, 2000),

---

not an evidentiary doctrine regarding the use of criminal convictions to establish facts, but instead determined that a claim that necessarily challenges an underlying conviction is not cognizable under § 1983.  512 U.S. at 489 ("Even a prisoner who has fully exhausted available state remedies has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus.")  Plaintiff does not suggest that his criminal convictions are in any way invalid (and has brought no such challenge through his criminal proceedings) and the civil reservation does not lessen the weight of the conviction.

Feeney v. Powell, No. 06-1849, 2008 WL 2478385 (D.N.J. June 17, 2008), and Jennings v. Fetterman, 197 F. App'x 162 (3d Cir. 2006).

The weakness in the defendants' argument lies in its application to the facts of this case.  As currently presented, Plaintiff has offered evidence that the defendant officers used excessive force after Plaintiff assaulted Officer Timek, after Plaintiff resisted arrest, and most importantly after Officer Timek and Officer Warner successfully subdued and handcuffed Plaintiff on the ground.  Plaintiff could consequently succeed in the present action without threatening the validity of his assault conviction, because "the factual basis for the conviction is temporally and conceptually distinct from the excessive force claim."  See Bush v. Strain, 513 F.3d 492, 498 (5th Cir. 2008). According to Plaintiff, his conduct met the elements of assault (including the absence of any justification for self-defense) and resisting arrest prior to the events giving rise to his excessive force claim, so that success on the excessive force claim would not undermine the validity of his convictions.  See Bush, 513 F.3d at 498-99 (civil claim for excessive force did not necessarily invalidate criminal conviction for resisting arrest, where plaintiff alleged that the excessive force occurred after police officer subdued plaintiff); Wells v. Cramer, 158 F. App'x 203, 204 (11th Cir. 2005) ("To the extent that Wells's complaint

14

alleged an excessive use of force after he was arrested, restrained and posed no threat to the defendant officers, his section 1983 action, if successful, would not necessarily imply the invalidity of his underlying convictions and is not Heck-barred."); Brengettcy v. Horton, 423 F.3d 674, 682-83 (7th Cir. 2005) ("Brengettcy is not barred by Heck because his challenge that [the police officer] used excessive force after he hit [the police officer] does not undermine Brengettcy's conviction or punishment for his own acts of aggravated battery."); Smithart v. Towery, 79 F.3d 951, 952-53 (9th Cir. 1996) (plaintiff's civil allegations that he was beaten after he assaulted the police officers did not undermine the validity of his conviction for assault).

Nor do Plaintiff's admissions during his guilty plea suggest otherwise.  Both of Plaintiff's admissions pertain to his conduct before he was handcuffed -- that he took a fighting stance when first confronted by Timek and that he refused to surrender his hands to be handcuffed.  Plaintiff's claims arise out of events that allegedly occurred after the defendant officers succeeded in handcuffing him.  Thus, success on his § 1983 claim does not necessarily invalidate his criminal convictions and so Plaintiff's Fourth Amendment claims are not barred by Heck.  See Lora-Pena, 529 F.3d at 506 ("Lora-Pena's convictions for resisting arrest and assaulting officers would not be

inconsistent with a holding that the officers, during a lawful arrest, used excessive force (or unlawful) force in response to his own unlawful actions.")

The cases cited by the defendant officers do not call for a contrary conclusion, for all three involve § 1983 claims of excessive force that arose out of the same conduct that led to a criminal conviction for assault or attempted homicide.  In Smith, a criminal jury found that the plaintiff drove his truck at a police officer, who fired three shots at the plaintiff during the assault.  2000 WL 33256676, at *1.  The district court found that Smith's claim that the police officer used excessive force in shooting at the plaintiff would necessarily undermine the validity of his criminal conviction for assault, because the criminal jury must have found that Smith used more force than the police officer and to succeed in his civil case a civil jury would have to find that the police officer used more force than Smith.  Id. at *3.  Similarly, in Feeney, the plaintiff admitted during his guilty plea for assault and resisting arrest that he continued to resist arrest so that the police officer had to use mace to subdue him.  2008 WL 2478385, at *5.  Consequently, to succeed on a claim that the officer's use of mace constituted excessive force, it would necessarily undermine his criminal conviction for assault.  Id.  Finally, in Jennings, the plaintiff was convicted of attempted homicide after engaging in a gun

16

battle with police, and then brought suit alleging that the
police used excessive force when they shot at him.  197 F. App'x
at 164.  In all three cases, the alleged excessive force that
formed the basis of the plaintiff's § 1983 was inextricably
intertwined with the plaintiff's criminal conviction.  By
contrast here, the alleged excessive force occurred after
plaintiff had committed his crimes (assuming plaintiff's facts to
be true, as this Court must).  <u>Heck</u> is no bar to Plaintiff's
present suit.

        2.  <u>Qualified Immunity</u>

The police officer defendants argue, in the alternative,
that they are entitled to qualified immunity from Plaintiff's
claims.  As an "accommodation of competing values," qualified
immunity strikes a balance by permitting a plaintiff to recover
for constitutional violations where the defendant officer was
"plainly incompetent or . . . knowingly violate[d] the law,"
while immunizing an officer who "made a reasonable mistake about
the legal constraints on his actions."  <u>Curley v. Klem</u>, 499 F.3d
199, 206-07 (3d Cir. 2007) (internal quotations and citations
omitted).

> The protection of qualified immunity applies regardless
> of whether the government official's error is "a mistake
> of law, a mistake of fact, or a mistake based on mixed
> questions of law and fact."  <u>Groh v. Ramirez</u>, 540 U.S.
> 551, 567 (2004) (KENNEDY, J., dissenting) (citing <u>Butz v.</u>
> <u>Economou</u>, 438 U.S. 478, 507 (1978) (noting that qualified
> immunity covers "mere mistakes in judgment, whether the
> mistake is one of fact or one of law")).

Pearson v. Callahan, 129 S.Ct. 808, 815 (2009).

The Court's assessment of whether a defendant is entitled to qualified immunity hinges on two considerations.[14]  The Court must determine "whether the plaintiff has alleged a deprivation of a constitutional right at all," id. at 816 (citation omitted), which, as the Court of Appeals has emphasized, is not a question of immunity as such, "but is instead the underlying question of whether there is even a wrong to be addressed in an analysis of immunity." Curley, 499 F.3d at 207.  In addition, the Court must address "whether the right that was [allegedly] violated was clearly established, or, in other words, whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id. (internal quotations and citations omitted).  The inquiry into whether a right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (citation omitted).

---

[14]  While under Saucier v. Katz, 533 U.S. 194 (2001), overruled in part by Pearson, 129 S.Ct. at 818, the qualified immunity analysis followed a "rigid order of battle," Pearson, 129 S.Ct. at 817 (citation omitted), under which the question of whether a right was clearly established was assessed only if the plaintiff had adequately alleged a violation in the first place, the Supreme Court adopted a more flexible approach in Pearson. As the Court explained, "[b]ecause the two-step Saucier procedure is often, but not always, advantageous, the judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking will best facilitate the fair and efficient disposition of each case." Pearson, 129 S.Ct. at 821.

### (a)   Deprivation of a Constitutional Right

The Court will begin with the threshold qualified immunity question and determine whether a jury could find that Plaintiff was deprived of a constitutional right.  The Fourth Amendment prohibits the use of excessive force by a law enforcement officer.  <u>Carswell v. Borough of Homestead</u>, 381 F.3d 235, 240 (3d Cir. 2004) (citing <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989)).  As the Court of Appeals has explained:

> In deciding whether challenged conduct constitutes excessive force, a court must determine the objective reasonableness of the challenged conduct, considering the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.  Other factors include the duration of the officer's action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.

<u>Couden v. Duffy</u>, 446 F.3d 483, 496-97 (3d Cir. 2006) (internal quotations and citations omitted).  Moreover:

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . . Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.  The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.

<u>Graham</u>, 490 U.S. at 396-97 (internal quotations and citations omitted).

19

Applying these considerations to the facts presented and viewing the evidence in the light most favorable to Plaintiff, the Court finds that a reasonable fact-finder could conclude that Defendants Timek and Warner used excessive force against Plaintiff and thereby violated his Fourth Amendment rights. Plaintiff testified during his deposition that after the Officer Timek and Officer Warner succeeded in bringing him to the ground and handcuffing him, the two officers (and potentially others) began to beat Plaintiff, punching him and kicking him in the jaw, for six or seven minutes.  (Pl. Dep. at 134-37.)  Moreover, according to Plaintiff, the police took steps to conceal their conduct by surrounding Plaintiff so that the beating could not be seen.  (Id. at 137.)  Taking Plaintiff's testimony as true, during the beating Plaintiff posed no threat to the police officers and there was no risk of his flight.  A reasonable jury could find that the degree of force allegedly used by Timek and Warner served no legitimate law enforcement purpose and was excessive.  See Couden, 446 F.3d at 497 (finding excessive force as a matter of law where plaintiff was not "resisting arrest or attempting to flee" at the time the force was used).

Upon a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  Anderson, 477 U.S. at 255.  In other words,

it is for the jury to determine whether Officer Timek and Officer Warner physically assaulted Plaintiff after he was handcuffed and subdued on the ground.  Because resolution of these issues implicates "disputes over facts that might affect the outcome of the suit under the governing law," Anderson, 477 U.S. at 248, summary judgment is not appropriate as to whether police officers' use of force against Plaintiff constitutes excessive force.

As to Officer Clayton, however, the Court finds that there is no evidence that Clayton used excessive force (or any force) against Plaintiff.  Officer Clayton submitted evidence that her only contact with Plaintiff was to bring him to the hospital and that she did not use any force against.  (Clayton Affidavit, Defs. Exh. 9 ¶¶ 7, 8, 11.)  Plaintiff testified that he did not "recall" whether Officer Clayton used any force against him. (Pl. Dep. at 134-36.)  In the absence of any evidence that Officer Clayton used force against Plaintiff, the Court concludes that no reasonable jury could find that Clayton deprived Plaintiff of any constitutional right and so Officer Clayton is entitled to qualified immunity.  The claims against Clayton will be dismissed and summary judgment entered in her favor.

### (b)  Clearly Established Right

It is not enough for the Court to find that a jury could conclude Plaintiff suffered a constitutional deprivation at the

hands of Defendants Timek and Warner, for the police officer
defendants are nevertheless entitled to qualified immunity if
Plaintiff's right, given the circumstances of this case, was not
"clearly established."  The Court finds, however, that it would
have been clear to a reasonable officer that beating a man for
six or seven minutes, with punches and kicks, after he is
handcuffed and lying on the ground, and taking steps to conceal
the beating, was unlawful.  See Saucier, 533 U.S. at 202 ("The
relevant, dispositive inquiry in determining whether a right is
clearly established is whether it would be clear to a reasonable
officer that his conduct was unlawful in the situation he
confronted.").  A reasonable officer in 2006 would know, based on
the factors set out in Graham and reiterated in Couden, that once
Plaintiff no long posed a risk to the police officers and no
longer posed a risk of flight, that a six minute beating was
excessive and unconstitutional.  See Giles v. Kearney, 571 F.3d
318, 326 (3d Cir. 2009) ("[A]t the time of the incident in 2001,
it was established that an officer may not kick or otherwise use
gratuitous force against an inmate who has been subdued.")
The Court will consequently deny Defendant Timek and Defendant
Warner qualified immunity at this stage.

> **D.  New Jersey Constitutional Claims**

The defendant police officers ask the Court to dismiss
Plaintiff's state constitutional claims for the same reasons

that, they argue, Plaintiff's Fourth Amendment claims fail.  In
particular, the defendant officers argue that no jury could find
that the officers used unreasonable force in violation of Article
I, paragraph 7 of the New Jersey Constitution.  The excessive
force analysis under Article I, however, is the same
"reasonableness" inquiry as used under the Fourth Amendment.  See
State v. Ravotto, 777 A.2d 301, 306-07 (N.J. 2001) ("Under the
Fourth Amendment of the United States Constitution and Article I,
paragraph 7 of the New Jersey Constitution, a search or an arrest
by the police must be reasonable, measured in objective terms by
examining the totality of the circumstances.")  Therefore, for
the reasons explained in Part II.C.2.a, supra, the Court finds
that just as a reasonable jury could find that Officers Timek and
Warner used excessive force when they beat Plaintiff after he was
subdued and handcuffed, so a jury could find that such force was
unreasonable under Article I of the New Jersey Constitution.  See
id. (Graham factors applied to reasonableness of force under
Article I as well as the Fourth Amendment).  Similarly, there
being no evidence that Officer Clayton used force against
Plaintiff, no jury could find that her conduct violated Article I
of the New Jersey Constitution.  Consequently, the Court will
deny Defendant Timek and Defendant Warner summary judgment on
Plaintiff's claim under the New Jersey Constitution, but grant

summary judgment to Defendant Clayton on Plaintiff's claim under the New Jersey Constitution.

### E.    State Tort Claims

Finally, the police officer defendants[15] ask the Court to grant them summery judgment on Plaintiff's tort claims, asserting that they are entitled to immunity under the New Jersey Tort Claims Act ("TCA"), N.J. Stat. Ann. §§ 59:1-1 to 59:12-3. "Unlike the immunity of public entities, the immunity of public employees under the [TCA] is the exception rather than the rule." Fielder v. Stonack, 661 A.2d 231, 239 (N.J. 1995).  Section 59:3-1(a) provides, "Except as otherwise provided by this act, a public employee is liable for injury caused by his act or omission to the same extent as a private person."

The police officer defendants assert that they are immune from liability under Section 59:5-2 of the TCA, which states that a public employee is immune from liability for any injury caused by "a person resisting arrest or evading arrest."  The Court finds that Defendants Timek and Warner are not entitled to this ground of immunity, at least as to Plaintiff's claims for excessive force, because Plaintiff's excessive force claims arose after Plaintiff ceased resisting arrest.  Therefore, a reasonable

---

[15] Because Plaintiff has failed to submit any evidence from which a jury could find that Defendant Clayton committed any wrongdoing, the Court will grant her summary judgment on Plaintiff's tort claims.

jury could find, taking Plaintiff's evidence as true, that the injuries he has alleged were not "caused by" his resistance to his arrest, but were instead caused by Timek and Warner's excessive force after Plaintiff was no longer resisting.  Timek and Warner are not entitled to summary judgment on the grounds of Section 59:5-2 immunity.

Defendants Timek and Warner also seek immunity under Section 59:3-3 of the TCA, which reads:

> A public employee is not liable if he acts in good faith in the execution or enforcement of any law. Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment.

Defendants Timek and Warner cannot avail themselves of this immunity, however, because "[t]he same standard of reasonableness, which applies in Section 1983 cases, also applies in determining questions of good faith arising under the Tort Claims Act, N.J. Stat. Ann. § 59:3-3." Gurski v. New Jersey State Police Dep't, 576 A.2d 292, 299 (N.J. Super. Ct. App. Div. 1990) (internal citations omitted); Fielder, 661 A.2d at 246-47. As discussed in Part II.C, supra, a reasonable jury could find that Timek and Warner were unreasonable in their use of force against Plaintiff after he was subdued and handcuffed.  The Court must therefore deny Defendants Timek and Warner summary judgment on the grounds of Section 59:3-3 immunity.

## III. CONCLUSION

For the foregoing reasons, the Court will grant summary judgment to Defendant Clayton as to all of Plaintiff's claims. The Court will further grant summary judgment to Defendant Timek and Defendant Warner for Plaintiff's claims under the Fifth Amendment and the Fourteenth Amendment, as well as any claim asserting false arrest.  The Court will deny Defendant Timek and Defendant Warner summary judgment on Plaintiff's Fourth Amendment claim for excessive force, and will further deny summary judgment on Plaintiff's claims under Article I of the New Jersey Constitution and New Jersey tort law, because there remain material facts in dispute.  The accompanying Order shall be entered.


**February 24, 2010**                            **s/ Jerome B. Simandle**
Date                                             JEROME B. SIMANDLE
                                                 United States District Judge

26